# Thompson *versus* Boyle.

85 477
22 SC 462

1. In a suit by an attorney, on a *quantum meruit*, for professional services, it is competent for the defendant, on cross-examination of another attorney practising at the same bar, to ask the witness what is the ordinary charge for defending a criminal charged with felony.

2. It is also competent for him to show by the examination of other members of the same bar what is the usage of that bar in cases similar to that which plaintiff had tried, and what the services of counsel therein were really worth.

3. The facts and circumstances upon which any reasonable presumption or inference can be founded as to the truth or falsity of the issue or disputed fact, are admissible in evidence.

4. A resort may be had to the general value belonging to things of a given class, in order to infer the value of a particular member of such class.

November 14th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Fayette county :* Of October and November Term 1877, No. 95.

Assumpsit by Charles E. Boyle against Samuel Thompson, for fees for professional services rendered by plaintiff to defendant.

The facts are stated in the opinion of this court.

The case was tried before Willson, P. J. The verdict was for the plaintiff for $5000, and the defendant took this writ, assigning for error the rejection of his several offers of evidence, which are also set forth in the opinion.

*Edward Campbell* and *Amzi S. Fuller*, for plaintiff in error.— Great latitude is allowed, in cross-examination, to test the knowledge and accuracy of a witness. The witnesses here were attorneys, practising in the same court in which the services were rendered by plaintiff. They had made estimates of the value of his services, and it was certainly competent for a defendant, on cross-examination, to propound any question that would tend to elicit their knowledge upon the subject: Greenl. on Ev., § 446; and the best means of obtaining this knowledge was to interrogate them as to the fees usually charged for professional labor in the courts of the locality. For the purpose of aiding the jury in determining the value of the services of an attorney, it is proper to receive evidence of the price usually charged for similar services by other persons of the same profession practising in the same court: Stanton *v.* Emery, 3 Otto 548 ; and the testimony of Mr. Kaine should have been admitted, to show what were the usual charges in the court of Fayette county.

All facts from which any reasonable inference can be drawn as to the truth or falsity of the issue, which tend in the slightest degree to sustain a material averment, or are illustrative of other facts in the case, are relevant, and should be received in evidence : Starkie on Ev., § 7 ; Miller *v.* Stem, 2 Jones 386 ; Brown *v.* Clark, 2 Harris 469.

[Thompson *v.* Boyle.]

*A. D. Boyd*, for defendant in error.—There can be no "ordinary charge for defending a criminal charged with felony." That task may involve one-half hour's work, without any preparation, in behalf of some unfortunate person without character and without means, on a charge of petty larceny, or it may require services extending over a year in a case involving great interests and responsibilities. There can be no fixed standard to measure the value of such services. The importance of the cause must be taken into consideration to determine their value : Kentucky Bank *v.* Combs, 7 Barr 543.

Mr. Justice WOODWARD delivered the opinion of the court, January 28th 1878.

When Mooney *v.* Lloyd, 5 S. & R. 412, was overruled by Gray *v.* Brackenridge, 2 P. & W. 75, the rule was settled that an action for attorney and counsel fees could be maintained. Whenever a controversy has since involved its discussion this rule has been recognised and enforced. The implied contract between counsel and client has become the subject of litigation, therefore, and the law applies to it the same principles that are applicable to other similar contracts, and affords relief in the same forms that it affords it to litigants concerning them. It has been made a ground of complaint by the defendant below, that the trial of this cause was governed by exceptional and special rules, under a belief, as was alleged in the argument, on the part of the court, that the fact that it was a controversy between counsel and client made its circumstances exceptional and special.

In December 1873, Samuel Thompson, the defendant, was indicted in the Quarter Sessions of Fayette for the offence of abortion, and was tried and convicted in the following September. Some months afterwards, upon the petition of citizens of the counties of Fayette and Westmoreland, a hearing was had before the Board of Pardons, and upon their recommendation a pardon was granted by the governor. Throughout the preparation and trial of the cause, and in all the proceedings taken to secure his pardon and discharge, the plaintiff below and George W. K. Minor, Esquire, were the defendant's counsel. For the professional services rendered by him the plaintiff demanded a fee of five thousand dollars, and the defendant refusing to pay it this suit was brought for its recovery.

In the course of the trial Mr. Minor was called as a witness for the plaintiff, and it was proposed by the defendant's counsel to ask him, on cross-examination, what was the " ordinary charge," in Fayette county, " for defending a criminal charged with felony." In the cross-examination of another witness, N. Ewing, Esquire, it was proposed to ask if he ever knew of a fee of five thousand dollars to be paid for services in that court. Both questions were

[Thompson v. Boyle.]

objected to as irrelevant, and the objections were sustained. These rulings have been made the grounds of the first and second assignments of error. The question to Mr. Minor, most probably, would have elicited no testimony of any importance, and the refusal to permit an answer to it would hardly warrant a reversal of the judgment. It was very general in its terms, but the objection to it was not on that ground. It was certainly relevant. If there was such a thing as an "ordinary charge" for defending a criminal in a trial for a felony, the defendant had the right to show it. When the question to Mr. Ewing was propounded he had sworn that he regarded the individual services of the plaintiff as worth five thousand dollars. Why was not the question pertinent for every reason and in every aspect? It was asked in the course of a cross-examination, and the defendant had the right to elicit the means and extent of the knowledge of the witness, in order to test the value of his opinion. It was relevant, for the measure of compensation for professional services was in issue, and where there is no other standard that measure must be found from evidence of current charges for similar services, in accordance with the ordinary professional usage. The question could not have been asked, in chief, by either party, but as cross-examination it was unobjectionable.

The third and fourth errors have been assigned to the rejection of the offers to show by Daniel Kaine, Esquire: 1. What was the usual compensation charged at the Fayette county bar for defending a prisoner charged in the Quarter Sessions with felony, where the time consumed in the trial was one day, and where a motion for a new trial and a motion in arrest of judgment were made; and 2. What the services of an attorney would be worth to go before the Board of Pardons at Harrisburg, where the time consumed did not exceed three days in going and returning. The minds of the plaintiff and his counsel seem to have been imbued with the idea that some special mystery attached to the trial of the indictment against this defendant, which excluded it from all comparison with any other litigation, withdrew the question of compensation from the operation of ordinary rules, and gave peculiar merit to the present claim. In refusing to hear the testimony of Mr. Kaine the court appear to have acted under the same impression. It is true that no two causes are identical, and the amount of labor in the preparation and trial of one will never be precisely the same that may be required in the preparation and trial of any other. And it may be assumed to be equally true that the defendant derived all the advantage from the efforts of his counsel which the highest legal ability and skill could give. And yet, the fact remains that the case presented here is a demand of five thousand dollars by one of two counsel of a defendant charged with a felony, for services rendered upon his trial and in his application for a pardon. The same fee demanded by Mr. Minor would swell

[Thompson *v.* Boyle.]

the amount to ten thousand dollars. This is a pretty significant sum to be paid as compensation to counsel in a cause to the trial of which a single day was devoted. The action was not upon any special undertaking by which the defendant had become bound. It was on a *quantum meruit.* If the fee demanded was such as any usage warrants it is very clear that poor men charged with crimes must defend themselves without professional aid. Whether or not the proceedings were so exceptional as to justify a charge transcending any known usage would depend on facts to be found by a jury on evidence submitted to them. But professional employment in one difficult case cannot be essentially different from professional employment in another case of equal difficulty. And its value being ascertained in one instance, its value in the other can be at least approximated. The very best means of adjusting this value are the opinions of those who, in earning and receiving compensation for them, have learned what legal services in their various grades are worth. And the fact that the proposition was to adjust the whole value by specific estimates in regard to the different items and details of the general claim would make the adjustment more satisfactory than an estimate in gross would be. There can be no necessary connection between the trial of an indictment and proceedings to procure a convicted defendant's pardon. Accuracy in the production of results required that the value of the separate services should be separately estimated.

A lawyer may bring suit for his fees, but his cause is to be tried like the causes of other men. When Chief Justice GIBSON said in The Kentucky Bank *v.* Combs, 7 Barr 543, that "a lawyer charged with particular preparations for a lawsuit, is not to be held responsible, or paid as a porter or a shoemaker," he intended simply to declare that the sacrifices of labor, time and money made by a lawyer in qualifying himself to discharge difficult and responsible duties, were to be considered in settling the amount of his compensation. The general proposition of the defendant was to show by Mr. Kaine, from his knowledge of the usage of the Fayette bar, in cases similar to that which the plaintiff had tried, what the services of counsel were really worth. In regard to compensation for labor performed in procuring the pardon, expert testimony would only be required to fix the allowance lawyers should receive for the time devoted to its performance. Upon both points Mr. Kaine was undoubtedly competent to speak. And the right of the defendant to the admission of the testimony not only rested on authority, but grew out of the very circumstances and nature of the case. "The great and general rule on the subject of evidence seems to be this, that the facts and circumstances upon which any reasonable presumption or inference can be founded, as to the truth or falsity of the issue or disputed fact, are admissible. * * * The rule depends principally upon two considerations : First, that where direct evi-

[Thompson v. Boyle.]

dence can be obtained of the disputed fact, it is still essential for the purposes of justice that it should be open to contradiction and confirmation from collateral circumstances; and, second, the frequent necessity of depending wholly upon presumptions and proofs from collateral circumstances, a necessity frequently arising from the failure of direct evidence:" 1 Stark. 17, 18. "So frequent is the failure of evidence from accident or design, and so great is the temptation to the concealment of truth and misrepresentation of facts, that no competent means of ascertaining the truth can or ought to be neglected:" Id. 39. The admission of *res gestæ* is justified by the author on that ground. In accordance with the rule thus stated, it has been held that even evidence which is too slight to prove a fact, but which is illustrative of other facts, is relevant, and ought to be received: Brown v. Clark, 2 Harris 467. And it is a sufficient answer to an objection to testimony as irrelevant, that it tends in the slightest degree to sustain a material averment: Miller v. Stem, 2 Jones 386. But the offered testimony of Mr. Kaine was something more than merely illustrative and relevant. It had a direct bearing on the very point of the controversy. It is well settled that market value may be proved by any one conversant with the markets. If the thing is one of ordinary use, ordinary business experience is sufficient for the purpose. As a general rule, persons accustomed to deal in real estate, or other property, may be examined as to the value of such property, and the effect on it of certain extraneous conditions. On questions of valuation of property, the safest course is to permit the examination of all having experience in the thing valued, leaving their authority to be tested on their cross-examination. These principles are developed and supported by numerous cases collected in the notes to sections 446 and 447 of Wharton's Law of Evidence. But it is claimed that the circumstances of this case resembled those of no other, and that testimony as to the value of general professional services was inadmissible for that reason. While evidence of exceptional and peculiar facts would always remain for the consideration of a jury, evidence resting on knowledge of circumstances of general similarity would not, therefore, be necessarily excluded. "A resort may be had to the general value belonging to things of a given class, in order to infer the value of a particular member of such class. A witness may not be allowed to speak of the exact distinctive value of an article he has not seen. He is allowed, however, to speak of the market value of the class to which this article belongs. He has never, for instance, seen a horse whose value is in controversy, and he cannot, therefore, answer as to the specific value. But he may answer as to the generic value of horses, of age, color, soundness and speed, such as those assumed to belong to this particular horse:" Wharton's Evidence, § 448. "Whenever the value of any particular kind of property, which

4 NORRIS—31

[Thompson *v.* Boyle.] ·

may not be presumed to be within the actual knowledge of all jurors, is in issue, the testimony of witnesses acquainted with similar property is admissible, although they have never seen the particular article in question :" Miller *v.* Smith, 112 Mass. 475.    In the present case, the defendant should have been permitted to show the value of the services of counsel under circumstances of general similarity to those under which the plaintiff's services were rendered.    All the distinguishing and peculiar features whose existence was alleged, could very easily have been still kept in view.    ·

Judgment reversed, and a *venire facias de novo* awarded.