## Williams v. Philadelphia, Appellant.

*Attorney at law—Fees—Contingent fees—Champerty.*

Contracts for contingent fees are lawful and enforceable by the courts, and something more than the mere contingency of the compensation is necessary to make them champertous.

*Attorney at law—Attorney and client—Assistance of client.*

A client when employing an attorney at law impliedly agrees to render reasonable assistance to the attorney in the litigation.

*Contract—Breach—Prevention of performance.*

Where a contract is to perform something in the future, the successful result of which is therefore necessarily uncertain, and performance is wrongfully prevented by the other party, a speculative element is unavoidably introduced into the question of damages, but cannot take away the right to just compensation. In such cases, all that can be reasonably required of plaintiff is to produce to the jury sufficient evidence, of the best character obtainable, of a fair prospect of success, and the compensation which would have followed.

*Attorney at law—Contingent fees—Breach of contract—Employment.*

In an action by an attorney at law against the city of Philadelphia to recover fees, it appeared that plaintiff being possessed of information of a public and not a private character, that the city had made overpayments in its settlement with the state for taxes, offered to procure credit for such overpayments. The mayor under authority of an ordinance accepted the offer and made a contract with plaintiff for a contingent fee of ten per cent. One settlement was opened by plaintiff's efforts. The city received a credit of about $30,000 on which plaintiff was paid his ten per cent fee. Plaintiff was then proceeding to open other settlements with the state, when the city believing that the result would be to its disadvantage, refused to go on and prevented plaintiff from further proceedings in its behalf. Plaintiff testified that he could have secured a further credit of $84,000, if he had not been prevented by the city. In this testimony he was contradicted by the city solicitor. *Held,* that the case was for the jury and that a verdict and judgment for plaintiff for ten per cent on $84,000 should be sustained.

Argued Jan. 8, 1904. Appeal, No. 110, Jan. T., 1903, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1895, No. 582, on verdict for plaintiff, in case of Carroll R. Williams v. Philadelphia. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Assumpsit by attorney at law for breach of contract of employment.

The facts are stated in the opinion of the Supreme Court.

Defendant presented these points:

1. Under all the evidence, your verdict should be for the defendant. *Answer:* Refused. [1]

2. If you find from the evidence in the case that the plaintiff solicited authority to institute the proceedings at his own cost; that the city was then pecuniarily able to pay counsel a stipulated fee; that plaintiff was not only to act as counsel but was to supply the evidence, the latter reason being urged by him for his employment, and that there was no necessity for employing plaintiff as counsel except for the knowledge of the facts which he alone claimed to have, and by means of which it was expected to sustain the claim, the contract sued upon is champertous and therefore invalid, and your verdict must be for the city, defendant. *Answer:* Stated as this point is, I decline to affirm it. [2]

3. If you find that the plaintiff's agreement with the city was that he should receive ten per cent of the amount recovered from the state, and the plaintiff was not only to advance the costs, but as the main consideration of the agreement was to furnish the evidence necessary for the recovery of the money, the agreement was champertous and invalid, and your verdict must be for the city, defendant. *Answer :* I decline to affirm this point upon any facts in evidence in this cause. [3]

4. If the jury believe that the plaintiff was unable to make the collections from the state by reason of the refusal of the city treasurer, city solicitor, or the Farmers' and Mechanics' National Bank to give him information without which he could not succeed in collecting said alleged overpaid taxes from the state, the city is not responsible for any loss which may have been caused thereby to the said plaintiff, and your verdict should be for the defendant. *Answer :* I decline to affirm that point. [4].

5. By his agreement with the city the plaintiff was required to furnish the information and to make the collections from the state without the active assistance of the city, or of any of its officers, and if the plaintiff's failure to make the collection was due to the refusal of the city's officers to aid him by furnishing information necessary to success, your verdict must be for the city, defendant. *Answer :* I decline to affirm that point. [5]

6. The defendant was not obliged, under the terms of the agreement with the plaintiff, to furnish information with which to prosecute the services undertaken by him. If you find, therefore, that it was impossible for the plaintiff to proceed to a successful determination of the matter without assistance from the city, he is not entitled to recover, and your verdict must be for the defendant. *Answer :* I decline to affirm that point. [6]

7. If the jury believe that the plaintiff was not removed from his office or position as assistant city solicitor, and if they further believe that he was not interfered with in the performance of his duty as assistant city solicitor by one or more of the city officials acting under councilmanic authority, then the defendant did not commit any breach of contract, and is not responsible for the unauthorized acts of its officials, and your

verdict should be for the defendant.  *Answer :* I decline that point.  [7]

The court charged inter alia as follows :

[If a man is employed to do a particular thing, and does all that he is required to do about it, the hindrance being by the other party to the contract, and there being no reason for the nonrecovery except the hindrance put in the way by the other party to the contract, then I charge you that the plaintiff, who is the party hindered in this case, if he has been hindered, would be entitled to recover.  If the plaintiff. was in a position to do everything that he contracted to do, and the case was such that he could have done it, and the only reason he did not do it was because the city did not allow him to do it, then the plaintiff can recover.]  [8]

[It is undoubtedly beneath the dignity of a commonwealth or a public corporation to engage in a speculative venture. Either the state of Pennsylvania owed the city of Philadelphia or it did not.  If the state of Pennsylvania owed the city of Philadelphia, the city of Philadelphia had no right morally (I will not say a word about legally, because I have not thought enough about it), it has no right as a dignified and respectable municipality to go into a partnership with anybody about its claim.  If it needed counsel to prosecute its claim against the commonwealth it ought to have made a contract honestly to pay counsel for such services, whether he would win or lose the claim, and if his services were worth $1,000 whether he won or lost it, or if they were worth $10,000, he should have it. It was a very small business on the part of the city of Philadelphia to enter into a contract with a private citizen by which some facts could be so used that the city should at all events win.  However, they did it, and for the purposes of this case the contract is here.  It was a speculative venture, no cure no pay, which I think according to the rules of the medical profession is considered the great badge of quackery.]  [9]

[In pursuance of that bargain Mr. Williams did recover $18,000 on one occasion and $10,000 on another (these figures are rough), and in respect of them he was entitled to $1,800 and $1,000 respectively, and got them.  Then came the subject-matter under dispute.  Mr. Williams began by making a state-

ment of claim and asking the mayor to sign it, and the mayor refused. That means practically that for the purpose of the employment the mayor did all he could to dismiss him. In the course of the proceeding that Mr. Williams had already commenced that was entirely beyond the power of the mayor at that stage.] [10]

[They would not let him go on, and the effect of that is not to deprive him of compensation at all. It is the same thing as if he had been allowed to go on. He is entitled to compensation.] [11]

[He was entitled to a verdict at all events, but a verdict at all events means only a verdict for six cents for a technical breach of the contract, and while that would be a vindication pro tanto of Mr. Williams, it would be of a very subordinate degree of satisfaction to him no doubt to have a verdict limited to six cents, especially as he desires it to amount as high as $8,400, and perhaps fifty per cent interest on that, which would be nearly $3,000 ; and, therefore, you must investigate.] [12]

Verdict and judgment for plaintiff for $8,580. Defendant appealed.

*Errors assigned* were (1–11) above instructions quoting them.

*J. W. Catharine*, assistant city solicitor, with him *John L. Kinsey*, city solicitor, for appellant.—The contract between Williams and the city was champertous : Stanley v. Jones, 7 Bing. 369 ; Goodrich v. Tenney, 144 Ill. 422 (33 N. E. Repr. 44) ; Quirk v. Muller, 14 Mont. 467 (36 Pac. Repr. 1077) ; Lyon v. Hussey, 82 Hun, 15 (31 N. Y. Supp. 281) ; Lucas v. Allen, 80 Ky. 681 ; Murray's Est., 2 Pa. Dist. Rep. 681; Huber v. Johnson, 68 Minn. 74 (70 N. W. Repr. 806) ; North Chicago St. Ry. Co. v. Ackley, 171 Ill. 100 (49 N. E. Repr. 222) ; Davis v. Webber, 66 Ark. 190 (49 S. W. Repr. 822).

The city was not obliged actively to assist plaintiff by furnishing him with the data to prosecute the claim against the state.

Where the employment of an agent is without any definite time and the authority is not coupled with an interest, the

relation may be terminated at will: Coffin v. Landis, 46 Pa. 426; Hill v. Jones, 152 Pa. 433; Fay Gas Fixture Co. v. Welsbach Light Co., 41 W. N. C. 478.

Where the fee is contingent on the successful prosecution of the suit, the measure of damages is not the contingent fee, but a reasonable compensation for the services actually rendered: Badger v. Mayer, 8 Misc. Rep. (N. Y.) 533 (28 N. Y. Supp. 765); Western Union Tel. Co. v. Semmes, 73 Md. 9 (20 Atl. Repr. 127); Polsley v. Anderson, 7 W. Va. 202; Carey v. Gnant, 59 Barb. (N. Y.) 574; Pierce v. Parker, 121 Mass. 403; Duke v. Harper, 8 Mo. App. 296; Scobey v. Ross, 5 Ind. 445.

An attorney cannot recover for services which are absolutely useless: Stockholm v. Robbins, 24 Wend. 109; Walker v. American Nat. Bank, 49 N. Y. 659.

*James W. M. Newlin*, for appellee.—The ordinance of councils employing appellee was not champertous: Strohecker v. Hoffman, 19 Pa. 223.

The city was obliged actively to assist plaintiff by furnishing him with the data to prosecute the claim against the state.

In a case like the present the measure of damages is the contract price where it can be shown, as was shown in this case, that a specific sum could have been collected, to which the contract price would apply: French v. Cunningham, 49 N. E. Repr. 797; Moyer v. Cantieny, 41 Minn. 242 (42 N. W. Repr. 1060); Webb v. Trescony, 76 Cal. 621 (18 Pac. Repr. 796).

OPINION BY MR. CHIEF JUSTICE MITCHELL, Mch. 7, 1904:

The substantial controversy in this case, briefly stated is this: plaintiff being possessed of information that the city had made overpayments in its settlements with the state for taxes, offered to procure credit for such overpayments; the mayor under authority of an ordinance accepted the offer and made a contract with plaintiff for a contingent fee of ten per cent; one settlement was opened by plaintiff's efforts, the city received a credit of about $30,000 on which plaintiff was paid his ten per cent fee; plaintiff was then proceeding to open other settlements with the state when the city, believing that the result would be to its disadvantage, refused to go on and

prevented plaintiff from further proceedings in its behalf. Plaintiff then brought this suit for the breach of contract.

The right of the city as a client to abandon a suit at any time when satisfied of its interest to do so, is not questioned in this case. But its obligation to plaintiff as its attorney is a different matter. That depends on the contract.

The contract here was all in print or in writing, and there is no room for question as to its terms. By resolution of councils of September 29, 1892, the mayor and city solicitor were " authorized to employ assistant counsel for the city of Philadelphia, to prosecute the claim of the city for a credit or credits with the commonwealth for taxes on loans, heretofore paid by the city treasurer, and for taxes on personal property heretofore paid by the city; " and under resolution of October 27, 1892, the compensation of such assistant was fixed at " ten per cent of the amount collected or recovered." Plaintiff was duly appointed under these resolutions. He had therefore an interest in the contract apart from his mere employment as an attorney, and of this he could not be deprived by the city's change of view as to the advisability of further prosecuting its claims.

It is urged, and that is perhaps the main stress of the argument here, that the contract is champertous and should not be enforced by the courts. But the facts do not sustain this view. Contingent fees are not illegal. They enable some just claims to be recovered which the circumstances of the parties would otherwise defeat, while on the other hand they certainly tend to encourage litigation of a speculative and unfounded character, which is against the true interests of society. But, wisely or unwisely, a point on which opinions may fairly differ, the law has long been settled that contracts for such fees are lawful and enforceable by the courts, and something more than the mere contingency of the compensation is necessary to make them champertous. What the plaintiff undertook to do here was not to furnish testimony as a witness, or to do any other act of improper or even doubtful tendency, but to use certain information already accessible to those who looked for it, in a way that his superior knowledge or superior professional skill would make available for his client's benefit. As it was clearly stated by the learned judge

to the jury, " the fact was perfectly public.    It was not a private fact.    It was a fact known to the commonwealth and known to the municipality . . . . and therefore there was really no secret whatever about it.    But . . . . though the fact was known, the attention of the city solicitor had never been directed to it, and the attention of the city treasurer had not been sufficiently directed to it to raise a question apparently, and what Mr. Williams did do was to point out that a matter well worthy of attention had not been attended to."    This had no essential element of champerty.

The next question is of performance by the plaintiff, or what was legally equivalent thereto, and of breach by the city. What the plaintiff undertook to do by his contract was to obtain credit for the city for previous overpayments.    It appears to be conceded that the state, even in cases of admitted overpayment, does not return the money but gives a credit of the amount on the account at the next settlement.    Accordingly the ordinance and the plaintiff's appointment specify his undertaking as the prosecution of· " the claim of the city for a credit, or credits, with the commonwealth for taxes on loans," etc., and the compensation fixed " at ten per cent of the amount collected or recovered " must be understood in its connection as meaning ten per cent of the credit secured. Plaintiff showed the recovery of a credit for about $30,000, as already noted, and gave evidence tending to show that he could have secured a further credit of $84,000, but was prevented by the action of the city.    This action, which constitutes the breach complained of, consisted of the refusal of the mayor to sign, on behalf of the city, a statement of the claim to be presented to the state board of accounts, and the subsequent refusal of the city officers and agents to furnish the lists or registers of the bonds and bondholders requisite to enable plaintiff to establish the main fact of payment of taxes on bonds which were exempt or on which the taxes had already been paid by the corporations owning them.    It is argued for the city that it was not bound to give any active assistance, as plaintiff had undertaken to do the whole himself.    Points were presented for charge that : " 5. By this agreement with the city, the plaintiff was required to furnish the information and to make the collections from the state without the active

assistance of the city or of any of its officers, and if the plaintiff's failure to make the collection was due to the refusal of the city's officers to aid him by furnishing information necessary to success, your verdict must be for the city, defendant." And 6. " The defendant was not obliged, under the terms of the agreement with the plaintiff, to furnish information with which to prosecute the services undertaken by him. If you find, therefore, that it was impossible for the plaintiff to proceed to a successful determination of the matter without assistance from the city, he is not entitled to recover, and your verdict must be for the defendant." These points the learned judge properly refused. There is nothing in the contract or the circumstances of its making to take it out of the general rule, which is that the party to be benefited, in this case the client, impliedly agrees to render reasonable assistance to the effort in his behalf. The refusal to sign the claim for presentation to the board of accounts was in effect refusing to furnish the plaintiff with a letter of attorney to act for the city in the matter he had undertaken, and the schedules of bonds were a proper part of the evidence in the case which was within the custody and control of the city. The plaintiff did not contract to prosecute a suit against the obstruction of an unwilling client, but was entitled to rely on the implied condition not only of willingness, but of reasonable assistance. This branch of the defense, however, is manifestly an afterthought. The signature and the schedules were not refused because the city did not consider itself obliged to furnish them, but because it had determined that it did not desire the claim prosecuted, and intended to prevent the plaintiff from doing so. This, as already said, it had the right to do, but it could not thereby escape its obligations to the plaintiff. The evidence of the breach of the contract was properly received and properly submitted to the jury.

The remaining question has reference to the damages. The plaintiff testified that he would have obtained a further credit of $84,000, while Mr. Catharine, the assistant city solicitor, testified that in his opinion, the largest credit that could have been obtained would have been $33,000, and that this would have been more than offset by new debits in the restated account. These opinions were received as those of experts.

The accounts in question had been settled and closed, and the time for appeal had gone by. The only chance for opening and restatement was in the discretion of the state board of accounts, which had not been exercised. It was therefore as the judge told the jury impossible to procure evidence of an absolutely certain character as to what would have been the result of plaintiff's efforts, and in such cases the law allowed the best substitute which was attainable. In this there was no error. Where the contract is to perform something in the future, the successful result of which is therefore necessarily uncertain, and performance is wrongfully prevented by the other party, a speculative element is unavoidably introduced into the question of damages, but cannot take away the right to just compensation. In such cases, all that can be reasonably required of a plaintiff is to produce to the jury sufficient evidence, of the best character attainable, of a fair prospect of success, and the compensation which would have followed. This the court left to the jury in the present case, stating the evidence as fairly and as strongly for the defendant as for the plaintiff. The evidence, he said, " being before you, you must find out what was the reasonable probability of recovery. If the reasonable probability was, as Mr. Williams says, that he should recover $84,000, which was only prevented by the interference of the mayor of the city of Philadelphia in refusing to sign the statement, and the consequent refusal of the assistants of the city to give requisite and necessary information, then he is entitled to recover $8,400 with interest from the time when it was due and payable. If you find on the other hand that Mr. Catharine's estimate is correct as to the amount, then he is entitled to recover $3,300, with interest from that time. But if you find that Mr. Catharine's further judgment that on a full restatement of the account the debits that would have been properly chargeable to the city of Philadelphia would have consumed and eaten up the $33,000, is correct, then the plaintiff is not entitled to recover at all." He then further charged the jury that if the evidence as to the probable success of the plaintiff had he been permitted to prosecute the claim was so based on conjecture and speculation that it did not afford sufficient certainty to the jury's mind to reach a conclusion, then they should resort to the

value of the services actually rendered, without regard to the contingent fee. The city certainly had nothing to complain of in this instruction.

In the course of the charge the learned judge commented on the duty of the city to pay its debts and the propriety of going into a partnership with an individual about its claim by a contract in such form that it was to win whatever the result, which he characterized as " small business." These comments are assigned for error, but we do not find that the learned judge in any way exceeded his privilege in placing the case properly before the jury.

Appellant moved to suppress the appellee's paper-book for scandalous and impertinent matter, reflecting on appellant's counsel. The paper-book shows that the appellee's counsel has allowed himself to make insinuations not only professional but personal, which are wholly without justification by anything in the evidence or the case, but they are so manifestly the outcome of temper that we think it sufficient to order all such matter expunged from the record.

Judgment affirmed.