## Kent v. Fishblate, Appellant.

*Attorneys-at-law—Contracts for services—Conflicting evidence —Case for jury.*

An attorney-at-law may lawfully contract with one about to enter into the relation of a client, for payment of compensation for services to be rendered, and may maintain an action upon such contract. Where the contract was oral and the evidence was in dispute as to its terms, and involved the question whether the attorney had been unjustifiably dismissed before the completion of his services, the case was necessarily for the jury.

Argued Oct. 14, 1914. Appeal, No. 95, Oct. T., 1914, by defendant, from judgment of C. P. Allegheny Co., June T., 1911, No. 642, on verdict for plaintiff in case of Edward J. Kent v. Florence M. Fishblate. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Assumpsit on a parol contract for the payment of counsel fees. Before SWEARINGEN, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $4,600 and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury.

*S. S. Robertson,* for appellant.

*H. K. Siebeneck,* of *Seymour, Patterson & Siebeneck,*
for appellee.

OPINION BY MR. JUSTICE BROWN, January 2, 1915:

S. A. Fishblate and Florence M. Fishblate were hus-
band and wife, but they became estranged and separated.
In 1910 she took steps to recover from him certain per-
sonal property which she alleged belonged to her. Three
of the items claimed by her were definitely stated in the
bill which she filed, and amounted to $46,000; the fourth
was indefinite in amount. A report of the litigation and
of the result of it is found in Fishblate v. Fishblate, 238
Pa. 450. Before this proceeding was instituted Mrs.
Fishblate called upon E. J. Kent, Esq., the appellee, a
member of the Allegheny County bar, for the purpose
of securing his professional services, and, according to
her own testimony, insisted that she wanted some defi-
nite understanding about the fee to be charged. She
thought there ought to be a written contract between
them, but they finally entered into an oral one, and the
sole question in this controversy between them is as to
its terms. She insists the agreement was that he was to
receive ten per cent. of what he recovered, while he
claims that she agreed to pay him ten per cent. of the
amount involved in her claim against her husband. The
jury having found that the agreement was the one de-
clared upon by the appellee, returned a verdict in his
favor, and from the judgment upon it Mrs. Fishblate has
appealed.

The assignments of error relate wholly to the instruc-
tions of the court in the charge to the jury. The first
question submitted to them was whether the appellee,
under his agreement with the appellant, was to receive
ten per cent. of the amount involved—that is, ten per
cent. of her claim against her husband—or only ten per
cent. of what she might recover in the litigation to be
instituted for her by the appellee, and this question was
submitted under the following instruction: "You have

the testimony of the respective parties, and the testimony of all who could have heard what did take place, and it is for you to determine what the contract really was. The burden is on the plaintiff to establish the contract by the weight of the evidence, and you will take into consideration the positive testimony of the parties, and the other circumstances of the case, and ascertain what, in your judgment, the weight of the evidence leads to,—namely, whether the contract was made as stated by the plaintiff, or whether it was made as stated by the defendant." This was clear and correct, and the jury could have been left in no doubt as to what was the main question in the case.

But it is alleged by counsel for appellant that, even if the contract between her and the appellee was what he contends it was, and the jury found it to be, it ought not to be regarded as an enforceable one. In support of this proposition no authority has been cited, probably for the very good reason that none can be found. A page or two of the printed argument is devoted to references to generalities in one or two authorities relating to the well-settled and equally well-known rule which requires the highest degree of fairness and good faith on the part of an attorney towards his client, but they are utterly without application to the facts before us. When the contract upon which the appellee stands was entered into the relation of attorney and client between him and the appellant did not exist. It was for the purpose of establishing such relation that the contract as to fees was made, for the appellant herself testified that she said to the appellee that she thought she should have a written contract to determine the fees he was to receive, as she did not care to go into the case and spend all for fees after it was decided, if it should be decided against her. They were dealing at arm's length with each other in making the contract. That it was, in the absence of fraud, as binding upon the appellant as if it had been between her and a tradesman has been the settled rule

with us ever since—with the expressed satisfaction of
Chief Justice GIBSON—Mooney v. Lloyd, 5 S. & R. 412,
was overruled by Gray v. Brackenridge, 2 P. & W. 75.
In Thompson v. Boyle, 85 Pa. 477, the action, brought
by a gentleman of the bar, was not upon an express con-
tract, but upon an implied one that his client would pay
for his services. It was there, as here, contended that,
as the controversy was between counsel and client, the
trial of the cause was governed by exceptional and spe-
cial rules, but it was said by Mr. Justice WOODWARD:
"When Mooney v. Lloyd, 5 S. & R. 412, was overruled by
Gray v. Brackenridge, 2 P. & W. 75, the rule was settled
that an action for attorney and counsel fees could be
maintained. Whenever a controversy has since involved
its discussion this rule has been recognized and enforced.
The implied contract between counsel and client has be-
come the subject of litigation, therefore, and the law
applies to it the same principles that are applicable to
other similar contracts, and affords relief in the same
forms that it affords it to litigants concerning them
......A lawyer may bring suit for his fees, but his cause
is to be tried like causes of other men." In Williams v.
Philadelphia, 208 Pa. 282, the contract of the plaintiff,
a member of the Philadelphia bar, with the City of
Philadelphia, was for a contingent fee of ten per cent.
to be paid him for procuring credits with the State for
overpayments of taxes to it. It was urged by the city
as its main argument, in asking us to reverse the judg-
ment below in favor of the plaintiff, that the contract
was champertous and illegal. In holding that it was
valid and enforceable, Mr. Chief Justice MITCHELL,
speaking for the entire court, said: "It is urged, and
that is perhaps the main stress of the argument here,
that the contract is champertous and should not be en-
forced by the courts. But the facts do not sustain this
view. Contingent fees are not illegal. They enable
some just claims to be recovered which the circum-
stances of the parties would otherwise defeat, while on

the other hand they certainly tend to encourage litigation of a speculative and unfounded character, which is against the true interests of society.  But, wisely or unwisely, a point on which opinions may fairly differ, the law has long been settled that contracts for such fees are lawful and enforceable by the courts, and something more than the mere contingency of the compensation is necessary to make them champertous."  The latest case upon the subject of the right of an attorney to recover compensation for his professional services is Higgins v. Ostrander, 244 Pa. 279.

Another contention of the appellant, to be briefly noted, is that, as she discharged the appellee for cause, he is not entitled to any compensation.  The answer to this is that the jury found as a fact that she was not justified in discharging him.  He was, therefore, entitled to get what she promised to pay him: Williams v. Philadelphia, supra.  It may be proper to note that it appeared from the testimony that, before the appellant discharged the appellee, he had procured an offer of settlement which would practically have given her all she claimed.

Each assignment of error is overruled and the judgment affirmed.