# Wood's Estate.

*Executors and administrators—Trusts and trustees — Duties — Liabilities.*

1. All that a court of equity requires from trustees is common skill, common prudence and common caution. Executors, administrators or guardians are not liable beyond what they actually receive, except in case of gross negligence or wilful default.

*Decedents' estates—Counsel fees—Settling estate—Fees for services rendered prior to death—Evidence—Judicial notice.*

2. The allowance for services of counsel in settling an estate is largely a matter for the court below.

3. An allowance of such fees by the court below will be approved, where it does not disclose an abuse of discretion, nor violate the rule that counsel fees can only be allowed for services beneficial to the estate, and not for such as were rendered for individual benefit.

4. The orphans' court, in settling an account of an executor, who was also decedent's attorney, commits error in allowing a claim for legal services rendered in decedent's lifetime, without any evidence being offered as to the value of such services.

5. In such case the court cannot take judicial notice of the value of the services.

*Evidence—Witness—Competency of witness—Death.*

6. Where an executor is first called as a witness, by one excepting to his account, and cross-examined at large as to matters occurring before and after the death of the testatrix, he is made competent for all purposes.

7. When he is recalled upon his own behalf, and no objection is made to his competency, his testimony is properly before the auditing judge, and exception thereto is without merit.

Argued October 3, 1921. Appeal, No. 55, Oct. T., 1921, by Mary Gregg, residuary devisee, from decree of O. C. Washington Co., May T., 1920, No. 89, dismissing exceptions to adjudication, in estate of Elizabeth Wood, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Decree modified and affirmed.

Exceptions to adjudication.   Before HUGHES, P. J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed.   Mary Gregg, residuary devisee, appealed.

*Error assigned,* among others, was decree, quoting it.

*Harry S. McKinley,* with him *J. P. Miller,* for appellant.—The accountant should be surcharged for the difference between the real value of the real estate sold by him and the price he obtained for the same: Wilhelm v. Folmer, 6 Pa. 296; Penna. R. R. Co. v. Penna. Co. for Ins., etc., 205 Pa. 219; Noble's Est., 178 Pa. 460; Leslie's App., 63 Pa. 355; Gilbert's App., 78 Pa. 266; Semple's Est., 189 Pa. 385.

Accountant should have been surcharged for the amount allowed him by the auditing judge for professional services rendered decedent in her lifetime: Heydrick's App., 109 Pa. 610; Bickel's Est., 9 Pa. Dist. R. 129.

An executor who has been guilty of misconduct shall not be allowed commissions: Clauser's Est., 84 Pa. 51; McLeod's Est., 12 Phila. 81; Milligan's App., 97 Pa. 525; Schurr's Est., 13 Phila. 353; Locher's Est. (No. 2), 219 Pa. 46; Price's Est., 81 Pa. 263.

Under the facts and testimony, the attorney's fee of accountant's attorney should have been disallowed: Pusey v. Clemson, 9 S. & R. 204; Wither's App, 13 Pa. 582; Stephen's Est., 56 Pa. 409; Clauser's Est., 85 Pa. 51; Good's Est., 150 Pa. 307; Glesenkamp's Est., 51 Pitts. L. J. 155; Fox's App., 125 Pa. 518.

*A. R. Witherspoon,* of *Witherspoon & Devore,* with him *R. H. Meloy,* for appellee, cited: Semple's Est., 189 Pa. 385; Webb's Est., 165 Pa. 330; Calhoun's Est., 6 Watts 185; Moore's App., 10 Pa. 435.

OPINION BY MR. JUSTICE WALLING, January 3, 1922:

Elizabeth Wood, of Washington County, died testate on June 23, 1919, leaving an estate of about $10,000, mostly in personalty. R. H. Meloy, Esq., of the Washington County Bar, had been acting as her attorney in fact and legal advisor for over three years. He looked after her property, transacted her legal business, including the drawing of her will, in which he was named executor and his compensation as such was fixed at $500. Among the securities held by Mrs. Wood was a $2,800 mortgage on a house and lot at Wilkinsburg, owned by Marie Orr, who rented the property through John L. Hoffman, a local real estate agent; but the net rent was not sufficient to pay the interest on the mortgage. Miss Orr, after some negotiations and shortly prior to the death of Mrs. Wood, turned over the property in consideration of the mortgage debt, the deed being taken in the name of Meloy, to avoid a possible merger, but in reality for Mrs. Wood. Meloy qualified as executor and, being in doubt as to the value of the Wilkinsburg property, caused the mortgage thereon to be appraised at $2,000. During the summer and fall of 1919, he made an honest but unsuccessful effort to sell the property so as to realize the amount of the mortgage, but in December a Mrs. Thomas, through Hoffman, made an offer of $2,400 and agent's commission for the house and lot, which Meloy in good faith and acting with reasonable prudence accepted, received $100 hand money and entered into a written agreement for the sale of the property, and in the following March it was consummated by deed, payment of purchase money and satisfaction of the mortgage.

Mrs. Mary Gregg, the appellant, was the residuary legatee and devisee under Mrs. Wood's will; as such she came to Meloy in January, 1920, and objected to the consummation of the sale to Mrs. Thomas, expressing a desire to accept the Wilkinsburg property in kind. However, Mrs. Thomas declined to release her claim and ap-

pellant took no legal steps to prevent the sale, so it was consummated. Meanwhile, at the instance of Mrs. Gregg, two real estate agents appraised the property at approximately $4,000. The evidence indicates that soon after decedent's death appellant had some informal talk with the executor about taking this property, but he thought it might be necessary to make sale of it to secure sufficient funds to pay specific legacies, expenses, etc. The executor filed an account in which he charged himself, inter alia, with the $400 received from Mrs. Thomas, in addition to the $2,000 for which the mortgage had been inventoried. Among the exceptions filed by appellant was that accountant should be surcharged with the difference between her appraisement and what he received for the property. She further excepted to his claim of $500 for services as executor, also to his claim of $580 balance for legal services rendered decedent in her lifetime, and to his claim of $200 paid A. R. Witherspoon, Esq., for legal services rendered the executor. The auditing judge reduced the accountant's claims for legal services rendered decedent to $480 and the credit claimed for amount paid Mr. Witherspoon to $150 and dismissed all other exceptions; and, from final decree entered by the court below in accordance therewith, exceptant brought this appeal.

While Meloy held title to the Wilkinsburg property in his own name, he did so in fact as trustee for decedent and as such charged himself with all he received therefrom. Exceptant took no legal steps to prevent the consummation of the sale, and, as held by the orphans' court, ratified it by proceeding to surcharge accountant with an alleged loss thereby sustained; hence, the power of Meloy to make the sale is not here involved; while the real question is, Was he therein guilty of such misconduct as to fasten upon him a personal liability? This must be answered in the negative. "All that a court of equity requires from trustees is common skill, common prudence and common caution. Executors, adminis-

trators or guardians are not liable beyond what they actually received unless in case of gross negligence, for when they act as others do with their own goods, in good faith, they are not liable": Semple's Est., 189 Pa. 385; Neff's App., 57 Pa. 96. Executors are not liable beyond what they actually receive except in case of gross negligence or wilful default: Webb's Est., 165 Pa. 330. In passing upon the conduct of the trustee, we must do so upon conditions appearing when he entered into the contract of sale, including the facts that the property had been turned over to satisfy the $2,800 mortgage, that accountant had inspected the premises, sought information as to its value and endeavored to obtain a higher price and finally accepted the $2,400 net on the advice of the local agent. There is also the fact that the purchaser was a stranger to accountant, who realized no profit from the sale—not even a commission, as that was provided for in the will. He could not anticipate the boom in Wilkinsburg real estate, which started about the time he made the contract of sale and continued for some months thereafter; nor was he culpable in declining to repudiate his agreement with Mrs. Thomas, which might have subjected him to unpleasant and costly litigation. There is nothing in the evidence to justify a finding of negligence or bad faith on behalf of accountant in the sale in question and the exception thereto was properly dismissed by the orphans' court.

The $500, claimed as executor's commission, was provided in the will, was less than five per cent of the estate and was properly allowed, as nothing appears to justify withholding compensation from accountant.

The allowance for services of counsel in settling an estate is largely a matter for the court below (Com. v. T. & M. Bank of Pittsburgh, 268 Pa. 526; Traction M. Co. v. Pgh., M. & W. Ry. Co., No. 1, 261 Pa. 153, 161; New York Trust Co. v. Pullman Mfg. Co., 237 Pa. 261), and the $150 here approved for that purpose does not disclose an abuse of discretion, nor violate the rule that

counsel fees can be allowed only for services beneficial to the estate and not for such as are rendered to the trustee for his individual benefit.

The allowance of $480 to accountant, as a balance for legal services rendered the deceased in her lifetime, rests on different ground; as to that Meloy is merely a creditor of the estate, and, his claim being challenged by exceptant, the burden of proof is upon him: Com. ex rel. v. Monongahela Val. Bank, 239 Pa. 254; Traction M. Co. v. Pgh., M. & W. Ry. Co., supra. What testimony there is on this question is that of Meloy and his stenographer in a very general way to the extent and nature of his services, and also a copy of his correspondence with and for decedent. There was no agreement as to compensation and no evidence as to the value of the services rendered, except what might be gathered from their general character. The learned president judge of the orphans' court, however, fixed their value on the ground that as a member of the profession he was competent to do so. No one doubts his competency, and, if it was a question of fixing the fees of counsel for services rendered in the settlement of an estate, or other matter under the eye of the court, his right so to do might be conceded. However, this is the ordinary claim of an attorney for services, in the nature of a quantum meruit, where he must prove what he did and its value (6 Corpus Juris, p. 759; Allen v. Gregg (Pa.), 16 Atlantic Reporter 46, 48); while he offered some evidence as to the former he offered none as to the latter; hence, the allowance of the claim was error. A recovery in the orphans' court as elsewhere must be founded upon evidence and, except in special cases as above mentioned, judicial notice cannot be taken of the value of an attorney's services: 16 Cyc. 858, section 12 and note 95. A court will only take judicial notice of a matter of common and general knowledge (15 R. C. L., p. 1058) which the value of legal services is not. "A lawyer may bring suit for his fees, but his cause is to be tried like the causes of

other men": Thompson v. Boyle, 85 Pa. 477, 480. The opinion of those familiar with such services is the best evidence of their value (Thompson v. Boyle, supra) and cannot be disregarded by the court: Moore's Est. (No. 1), 228 Pa. 516, 522; Com. v. T. & M. Bank of Pittsburgh, supra.

At the audit, accountant was first called as a witness by exceptant and cross-examined at large as to matters occurring before and after the death of decedent; this made him a competent witness for all purposes and the court below properly so ruled. Moreover, when recalled in his own behalf, there was no objection made as to his competency; therefore, accountant's testimony was properly before the auditing judge and the belated exception taken thereto is without merit.

The $480 credit, allowed accountant for legal services rendered by him to the decedent in her lifetime is stricken out, and, as thus modified, the decree is affirmed at the costs of the estate.