J-A23015-25

2026 PA Super 34

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PARIS ELIAS CARTER | : | No. 65 WDA 2025 |

Appeal from the Order Entered January 10, 2025
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0000935-2021

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

CONCURRING/DISSENTING OPINION BY McLAUGHLIN, J.:

**FILED: February 24, 2026**

I respectfully dissent in part. I respectfully believe the trial court and the majority improperly resolve ambiguities in the calls, decide the factual question of the calls' meaning, and on that basis, declare certain calls irrelevant. Courts deciding if evidence is relevant are not tasked with finding facts. Rather, our job is to decide if the proponent of the evidence has shown that it has any tendency to make a fact of consequence more or less probable. If the evidence is ambiguous, that is a question of weight and credibility, not relevance, and is for the jury, not the court.

I also think, under the facts here, that the trial court's preclusion of calls because of Carter's use of slang and offensive language was improper. Applying what I believe is the proper analysis, I conclude that the trial court abused its discretion in precluding three calls: 01_208, 05_192, and 03_191.

"The threshold for relevance is low[.]" **Mitchell v. Shikora**, 209 A.3d 307, 314 (Pa. 2019). Evidence is relevant if it has "*any* tendency" to make a fact of consequence to the litigation more or less probable than it would be without the evidence. **Id.** (citing Pa.R.E. 401; emphasis in **Mitchell**).[1] The proponent of the evidence has the burden of establishing admissibility and relevancy. **Commonwealth v. Weber**, 701 A.2d 531, 535 (Pa. 1997). The "any tendency" standard is a liberal one, meaning that if the evidence makes a material fact even slightly more probable, it is relevant. **Mitchell**, 209 A.3d at 314, 319.[2] If the evidence meets this standard, it is admissible (unless excluded by another rule of law). Pa.R.E. 402; **Commonwealth v. Eubanks**, 512 A.2d 619, 624 (Pa. 1986).

Respectfully, I believe the majority and trial court have not adhered to these authorities and have applied too demanding a standard of relevance. Relevance should "not . . . be confused with deductive certainty, nor considered as if each bit of evidence must independently establish probability." **Commonwealth v. Clayton**, 532 A.2d 385, 390 (Pa. 1987). "Evidence that merely *advances an inference* of a material fact may be

---

[1] **See also Commonwealth v. Edwards**, 903 A.2d 1139, 1156 (Pa. 2006) ("Evidence is relevant 'if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact'") (citation omitted)).

[2] **See also Thompson v. Boyle**, 85 Pa. 477, 481 (1877) ("[I]t is a sufficient answer to an objection to testimony as irrelevant, that it tends in the slightest degree to sustain a material averment[.]").

admissible, even where the inference to be drawn stems only from human experience." **Commonwealth v. Alderman**, 811 A.2d 592, 595 (Pa.Super. 2002) (quoting **Commonwealth v. Hawk**, 709 A.2d 373, 376 (Pa. 1998)) (emphasis in original).[3] If relevant evidence is inconclusive, "its weight and persuasiveness [are] properly matters for the jury to determine." **Commonwealth v. Crews**, 640 A.2d 395, 403 (Pa. 1994).

Thus, ambiguous evidence is admissible if the proponent shows that it is reasonably susceptible to an interpretation that tends to prove or disprove a fact of consequence. **See Commonwealth v. Clemons**, 200 A.3d 441, 474 (Pa. 2019) (stating evidence is relevant "if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact"). So, in **Weaver v. Lancaster Newspapers, Inc.**, 926 A.2d 899, 906 (Pa. 2007), which was a defamation suit, our Supreme Court concluded that a later republication was admissible to show actual malice at the time of the initial publication. The Court explained that the "concern that republication only reflects a subsequent mental state goes to the weight of the evidence, not its admissibility" and "any question of weight requires an assessment of the credibility of testimony and is, therefore a question for the jury." **Id.**

---

[3] **See also** Pa.R.E. 401, Comment (stating relevance is determined "in light of reason, experience, scientific principles and other testimony offered in the case").

These principles are illustrated by cases dealing with the concept of conditional relevance. Our Court addressed the doctrine in ***Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority***, 479 A.2d 973, 1001 (Pa.Super. 1984). There, one issue was whether the injured plaintiff could recover the cost of certain treatment. ***See id.*** at 977, 997. That turned on whether the treatment was rehabilitative or custodial, which was disputed. ***See id.*** at 999. The trial court heard testimony and concluded that it was custodial such that the expense was recoverable, and it instructed the jury accordingly. ***Id.*** at 999-1000. We concluded that its doing so was error. ***Id.*** at 1000.

Pertinent to our decision here, we set forth in ***Reilly*** the limited role a court assessing conditional relevance plays. ***Id.*** We explained that "the judge should 'merely require the proponent . . . to bring forth evidence from which the jury could find . . . [the condition] to be true, after which the conditionally relevant fact will be admitted.'" ***Id.*** at 1001 (quoting McCormick on Evidence § 53 at 124-25 (2d ed. 1972).[4] If the proponent of the evidence carries its

_____

[4] "The judge requires the proponent to bring forward evidence from which a rational jury could find the existence of the preliminary fact. At this point, the judge plays a limited, screening role. The judge considers only the proponent's foundational testimony and does not pass on the credibility of the testimony. Rather, the test is a hypothetical jury finding. The judge must accept the testimony at face value and ask only this question: If the jury decides to believe the testimony, is there a rational, permissive inference of the existence of the preliminary fact? When the judge determines that the jury could not find the existence of the preliminary fact, she excludes the evidence. Otherwise, the question is for the jury to decide during deliberations. The jury
*(Footnote Continued Next Page)*

burden, then "the adversary may bring disputing evidence, and the dispute will in the end be for the jury, not the judge, to resolve." *Id.* (citation omitted).[5]

I believe the procedure we described in *Reilly* applies here. To show that the statements were relevant, the Commonwealth did not have to prove to the court that Carter's words meant what it argued they meant. Nor should the court have made any determination about their meaning. The Commonwealth only had to present evidence sufficient for a reasonable jury to find that the statements had the meaning the Commonwealth ascribed to them. The statements for which the Commonwealth carried that burden should then have been found relevant, and the question of their meaning should have been left to the jury.

---

makes the real factual determination whether the witness has personal knowledge or whether the letter is authentic." 1 McCormick on Evid. § 53 (9th ed. & Feb. 2025 update) (footnotes omitted).

[5] *See* Pa.R.E. 104(e) (stating admission "does not preclude a party from offering other evidence relevant to the weight or credibility of that evidence"); *see also Huddleston v. United States*, 485 U.S. 681, 690 (1988) (explaining conditional relevance, stating that "the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence," but merely "decides whether the jury could reasonably find the conditional fact"); *Commonwealth v. McGinnis*, 305 A.3d 547, 559 n.17 (Pa. 2023) (plurality) (Mundy, J., Opinion in Support of Affirmance) (quoting *United States v. Tony*, 948 F.3d 1259, 1263 (10th Cir. 2020)) (explaining that conditional relevance permits a court to "exclude evidence if the jury could not reasonably find the existence of a preliminary fact essential to make the evidence relevant").

I have listened to the recordings of the calls. Applying what I consider to be the proper analysis, I believe the trial court erred in excluding three of them.

*Call No. 01_208*

In this call, Carter is talking to his cousin, Safadeem — who was not present at the shooting — about Tashane Henry. (Like the majority, in the interest of clarity and consistency with the record, I will refer to him as "Tashane.") Tashane was an eyewitness and testified against Carter at the preliminary hearing.

During the call, Safadeem told Carter that Tashane had asked him for $20, and he gave him $5 or $10. Carter was outraged. Carter said, "If this nigga shows up, I'm cooked, I'm never coming home." He then said repeatedly that "if the shoe was on the other foot, I would be on his top." He later repeats, "I'll tell you what you should do, you should be on that nigga top, you should be, you shouldn't be sending him nothing till you correct that." At one point, when Safadeem says that he was afraid Carter would hurt him when he found out what had happened between Carter and Tashane, Carter makes a droning noise and talks over Safadeem, stating that he could not talk about that. He tells Safadeem to "call" someone because Tashane was "out of pocket."

The Commonwealth argues that Carter was attempting to have Safadeem intimidate Tashane. It maintains that his doing so is relevant as evidence of consciousness of guilt. Commonwealth's Br. at 19.

The trial court found that Carter was merely "complaining about his situation" and not trying "to intimidate a witness or have a third person intimidate a witness." Trial Ct. Op., 3/21/25, at 6. The trial court also considered that Carter's repeatedly calling "his cousin and others" "nigga" rendered the recording's risk of unfair prejudice of greater weight than its probative value. *Id.*

The majority likewise "interprets" the call as not being an attempt to interfere with a witness's testimony:

> The **main takeaway** is that Carter was telling Safadeem he should not be aiding Tashane since he is testifying against Carter. **What we interpret** from this call is that Carter was telling Safadeem that he needed to pick a side, between Carter or Tashane; that he could not support both of them. We cannot conclude this call was an attempt to interfere with a witness's testimony.

Majority Op. at 12 (emphasis added). The majority does not reach the risk of unfair prejudice.

Respectfully, we should not be trying to decide the statements' "true" meaning. The issue is whether a reasonable jury could conclude that the recording shows Carter attempting to influence a witness's testimony and thus his consciousness of guilt. *See Commonwealth v. Pestinikas*, 617 A.2d 1339, 1347–48 (Pa.Super. 1992) (holding that evidence of consciousness of guilt is relevant as a basis for an inference of guilt). I think it could. Carter's telling his cousin to be "on Tashane's top," not to give Tashane money "till you correct that," and to call someone because Tashane was "out of pocket"

can easily be construed as attempts to have Safadeem influence Tashane or to get him to have someone else do so.

Of course, there is ambiguity in phrases such as "on his top." As the Commonwealth points out, Carter's talking over Safadeem when Safadeem starts talking about his fear that Carter would hurt him suggests Carter knew the jail call was being recorded. That in turn suggests that he was intentionally using vague language to hide his meaning from authorities. That inference strengthens the argument for inferring that Carter intended the apparently coded message and wanted Safadeem to find a way to intimidate or otherwise influence Tashane's testimony. Although whether to make these inferences and find such facts is for the jury, this chain of reasoning demonstrates the logical relevance of the ambiguous phrases.

I thus would find the call relevant, and I strongly disagree with the trial court that Carter's use of "nigga" makes the call unfairly prejudicial. Although many find it troublesome, in the instant context, the word would not suggest a verdict on an improper basis or distract the jury from weighing the evidence impartially. *See* Pa.R.E. 403, Comment. The word is not uncommon in popular culture, and Carter was not using it in a racially discriminatory manner but rather to refer to a group to which he and all other relevant parties belong.

Carter is African-American,[6] as are Tashane and Safadeem,[7] such that a jury would be unlikely to hold it against Carter as evidence of racism.

Furthermore, this is not a case where race or ethnicity is an aspect of the wrongs against which the person using the word is defending, such as in a discrimination suit or an ethnic intimidation prosecution. Given the readiness with which statements on the call can be seen as inculpating Carter, I disagree that here the calls' probative value is outweighed by the risk of unfair prejudice. Concerns about the word's impact on the jury are properly addressed here through *voir dire* of the jury, redaction of avoidable uses of the word, or cautionary instructions to the jury. **See United States v. Price**, 13 F.3d 711, 720 (3d Cir. 1994).

*Call No. 05_192 and Call No. 03_191*

In call 05_191, Carter phoned his mother and brother, and his brother asked, "When are you coming home?" Carter responded, "[A]s long as bitch ass niggas stop running their mouth to the police that's when I'm coming home. As long as niggas close their mouth I'll be home." He added, "[A]s long as [Tashane] don't show up then I'm going home bro." Carter explained that Tashane "already showed up at the prelim[ary hearing.] . . . If he show up to trial I don't know what's going to happen."

---

[6] **See** Carter's Br. at 12.

[7] **See** Police Crim. Compl., 5/20/21, at 2. Safadeem is Carter's cousin.

The Commonwealth argues that this call is relevant as evidence of consciousness of guilt. The basis for the trial court's ruling is not clear to me, but it seems to conclude that, "given the entire context of the conversation," Carter was merely "complaining about his situation" and was not attempting to intimidate a witness. Trial Ct. Op. at 6. Stating that the conversation contains slang and that Carter again used the word "nigga," the court appears to find the call unfairly prejudicial. *Id.*

In call 03_191, during a discussion about two other witnesses against him, Carter states, "They tryin' to get me an elbow, which is bad for me, motherfuckers talkin', these motherfuckers show they going to try to cook me." (According to the Commonwealth, an "elbow" means a life sentence. *See* N.T., 1/9/25, at 15.)

The Commonwealth again argues consciousness of guilt. The trial court finds that defendant is complaining about his situation and not attempting to intimidate a witness. It characterizes the call as containing slang and more prejudicial than probative, apparently because of the word "nigga."

The majority concludes that neither call shows "an attempt to interfere with a witness's testimony." Majority Op. at 14. It finds that the calls "primarily" involve Carter expressing frustration about "his ongoing incarceration, and the possibility of a life sentence." It considers it significant that "[t]here is no direction for any of the callers to do anything regarding the witnesses" and defendant "never makes any actual admissions."

I would hold that because the statements are readily read as attempts to influence witnesses, they are relevant and can be admitted (barring another meritorious objection). Carter said that he will be home if people "stop running their mouth to police"; that if Tashane appears at trial he doesn't "know what's going to happen"; and that people "talking" are "going to try to cook him." It is not a stretch to interpret those statements as implicit requests to stop people from talking, *i.e.*, to interfere with cooperating witnesses. **See Commonwealth v. Johnson**, 838 A.2d 663, 680 (Pa. 2003) (finding attempts to influence testimony were relevant, even if they were not explicit threats).

Certainly, there is room to contend that Carter might have meant something else. That, however, is an argument for the jury, as I detail above. Furthermore, the use of slang in and of itself does not rise to the level of unfair prejudice. I also reiterate that I do not think the word "nigga" is so prejudicial here that the statements are inadmissible.

While I have not found a Pennsylvania decision with similar facts as those we address here, recent New York decisions support my position. In **People v. Burns**, 200 N.Y.S.3d 554 (N.Y. App. Div. 2023), the defendant was recorded stating in a phone conversation that he knew "what [he] did and [he] was] sorry" and that he would not talk any further because the call was being recorded. **Id.** at 557. The appellate court found the statements logically relevant "inasmuch as they evinced a consciousness of guilt[.]" **Id.** The court rejected the notion that uncertainty as to the significance of the statements

rendered the recording inadmissible. *Id.* The appellate court took the approach I now urge and found that "[a]ny ambiguity as to the defendant's intended meaning of his statements affected only the weight to be given to the recordings, not their admissibility[.]" *Id.* (quoting *People v. Sales*, 135 N.Y.S.3d 280, 280 (N.Y. App. Div. 2020)). Likewise, in *People v. Sales*, the appellate court concluded that excerpts of the defendant's telephone calls recorded while he was in custody were admissible, despite their ambiguity. *See People v. Sales*, 135 N.Y.S.3d at 280; *see also People v. McKenzie*, 78 N.Y.S.3d 66, 68 (App. Div. 2018) (same).

I do agree with the majority that the trial court properly precluded calls 41 and 111. In call 41, Carter was talking to his father and said that he wished "it wouldn't have went like that, I promise you that." In call 111, he states he wished he "could go back." The Commonwealth argued that those statements showed remorse and therefore consciousness of guilt. Because it was unclear whether defendant was talking about the shooting in Pennsylvania or the one in Georgia, the trial court concluded that the statements could mislead the jury and confuse the issues. The Commonwealth argues that because the trial court precluded evidence about the Georgia shooting, the jury would not be misled or confused.

Nothing in these two calls or anything else in the record shows that Carter was referring to the shooting at issue here. It was Commonwealth's burden to show that the calls were admissible. In the absence of anything to show which incident Carter was talking about, I do not believe the trial court

abused its discretion in precluding them due to the risk of confusing the issues and misleading the jury. However, as set forth above, I conclude that the trial court abused its discretion in precluding calls 01_208, 05_192, and 03_191. I respectfully dissent in part.